Julie E. Kenworthy (9536)
**KIRTON MCCONKIE**
36 South State Street, Suite 1900
Salt Lake City, UT 84111
Telephone: (801) 328-3600
Facsimile: (801) 321-4893
jkenworthy@kmclaw.com

Alyson Foster (14877)
Jennifer Schrack Dempsey (ID Bar No. 7603)
(Admitted pro hac vice)
**DEMPSEY FOSTER PLLC**
714 W. State Street
Boise, ID 83702
Telephone: (208) 401-9533
alyson@dempseyfoster.com
jen@dempseyfoster.com

*Attorneys for Plaintiff Konala, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| KONALA, LLC, an Idaho limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> MESSNER REEVES LLP, a Colorado limited liability partnership; and INBE CAPITAL LLC, a Wyoming limited liability company, <br><br> Defendants. | **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND MONETARY AWARD WITH RESPECT TO INBE CAPITAL, LLC** <br><br> Case No.: 2:24-cv-00195-HCN <br><br> District Judge Howard C. Nielson, Jr. <br><br> Magistrate Judge Jared C. Bennett |

# TABLE OF CONTENTS

Pg(s)

RELIEF REQUESTED AND GROUNDS......................................................................... 1

PROCEDURAL HISTORY............................................................................................. 1

FACTUAL BACKGROUND........................................................................................... 2

ARGUMENT ................................................................................................................... 9

   I. Default Judgment Should be Entered Against INBE ........................................... 11

      A. The Complaint States Meritorious Claims................................................... 11

         1. Breach of Contract (Count One)................................................................ 11

         2. Restitution Based on Quasi Contract/Unjust Enrichment (Count Five) ...... 12

         3. Rescission (Count Six).............................................................................. 13

         4. Consumer Protection (Count Seven) ........................................................ 15

      B. A Default Judgment Protects Konala's Rights............................................. 17

      C. Default May be Entered Although Another Defendant Has Appeared.......................... 18

   II. Konala is Entitled to Damages, Interest, and Attorney Fees and Costs .............................. 19

      A. Konala is entitled to the return of the ICA Payment of $325,000.00 Plus Interest.......... 19

      B. Konala is Entitled to Consequential Damages. ............................................. 20

      C. Konala is Entitled to Attorney Fees and Costs............................................. 22

CONCLUSION............................................................................................................... 22

## <u>TABLE OF AUTHORTIES</u>

pg.(s)

### <u>FEDERAL CASES</u>

*Bixler v. Foster*,
   596 F.3d 751 (10th Cir. 2010) ............................................................. 10

*Curtiss–Wright Corp. v. General Elec. Co*.,
   446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980).................................... 18

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986) ............................................................. 10

*Frow v. De La Vega*,
   82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872) ........................................ 18

*Garvey v. Buzznick, LLC*,
   No. 2:22-CV-00400-DBB, 2023 WL 3766104 (D. Utah June 1, 2023)................................. 19

*Green Oak Hedge Fund, Ltd. v. Hopkinson*,
   No. 2:06-CV-636 TS, 2008 WL 153772 (D. Utah Jan. 14, 2008).......................................... 18

*Hiatt v. Brigham Young Univ.*,
   512 F. Supp. 3d 1180 (D. Utah 2021)..................................................... 11

*In re Rains*,
   946 F.2d 731 (10th Cir. 1991) ...................................................... 10, 17

*Lucero v. Bd. of Directors of Jemez Mountains Coop., Inc.*,
   495 F. Supp. 3d 1135 (D.N.M. 2020) .................................................... 10

*Meyers v. Pfizer, Inc.*,
   581 F. App'x 708 (10th Cir. 2014)........................................................ 9

*Miller v. Oklahoma Dep't of Hum. Servs*.,
   No. 23-6119, 2024 WL 2828863 (10th Cir. June 4, 2024).................................... 10

*Tripodi v. Welch*,
   810 F.3d 761 (10th Cir. 2016) ...................................................... 10, 11

*United States v. Craighead*,
   176 F. App'x 922 (10th Cir. 2006)...................................................... 10

*United States v. Justice*,
   No. 05-CV-00820-TS,2006 WL 1402197 (D. Utah Apr. 4, 2006)........................... 10

### <u>STATE CASES</u>

*Anderson v. Doms*,
   984 P.2d 392 (Utah App. 1999) ...................................................... 15, 21

*Andreason v. Felsted*,
   137 P.3d 1 (Utah 2006)................................................................ 15, 20

*Bergstrom v. Moore*,
   677 P.2d 1123 (Utah 1984) ............................................................. 14

*Breuer–Harrison, Inc. v. Combe*,
   799 P.2d 716 (Utah Ct.App.1990) ...................................................... 13

*Castillo v. Atlanta Cas. Co.*,
   939 P.2d 1204 (Utah Ct.App.1997) ........................................................ 20
*Cross v. Olsen*,
   303 P.3d 1030 (Utah App. 2013) ........................................................... 13
*Fell v. Alco Capital Group LLC*,
   538 P.3d 1249 (Utah 2023) .................................................................... 15
*Holmes v. American States Ins. Co.*,
   1 P.3d 552 (Utah 2000) ......................................................................... 15
*Jones v. Mackey Price Thompson & Ostler*,
   355 P.3d 1000 (Utah 2015) .................................................................... 12
*Mahmood v. Ross*,
   990 P.2d 933 (Utah 1999) ...................................................................... 20
*Martinez v. Best Buy Co., Inc.*,
   283 P.3d 521 (Utah 2012) ...................................................................... 15
*Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*,
   850 P.2d 447 (Utah 1993) ........................................................... 13, 14, 20
*Young H2ORE LLC v. J&M Transmission LLC*,
   543 P.3d 1264 (Utah 2024) .................................................................... 14

## STATE STATUTES

Utah Code § 13-11-3 ................................................................ 15, 16, 21, 22
Utah Code § 13-11-1 through 13-11-23 ............................................... 15
Utah Code § 78B-5-825 ......................................................................... 22
Utah Code §78B-5-826, .......................................................................... 22

## FEDERAL RULES

Fed. R. Civ. P. 7 ....................................................................................... 1
Fed. R. Civ. P. 12 ..................................................................................... 2
Fed. R. Civ. P. 54 ......................................................................... 1,18, 22
Fed. R. Civ. P. 55 ............................................................... 1, 2, 9, 10, 22

## D. UTAH LOCAL RULES

DUCivR 7 ............................................................................................. 1,4
DUCivR 54 ........................................................................................... 1,4
DUCivR 55 .......................................................................................... 1,22

## STATE RULES

Utah Rule of Professional Conduct 5.4 ................................................. 22

Pursuant to the Clerk's Entry of Default Certificate against Defendant INBE Capital LLC ("**INBE**" or "**Defendant**") on July 12, 2024 (Dkt. No. 29), and in accordance with Federal Rules of Civil Procedure 7(b), 54(a)-(d) and 55(b)(2) and DUCivR 7-1, 54-1 and 55-1, Plaintiff Konala, LLC ("**Konala**"), through its counsel of record, hereby moves the Court to enter default judgment against INBE as set forth below.  Included with this Motion is the Certificate of Default, attached hereto as Exhibit "A," and the proposed Default Judgment, attached as Exhibit "B."[1]  This motion is supported by the Declaration of Trace Miller, filed herewith.

## RELIEF REQUESTED AND GROUNDS

Pursuant to the above-recited Federal Rules of Civil Procedure and their local counterparts, and in accordance with the prayer for relief set forth in Konala's First Amended Complaint against INBE (Dkt. No.15), and based upon the declaration evidence submitted herewith, Konala respectfully moves the Court to (1) enter a default judgment against INBE and (2) to award Konala damages, fees and costs of suit pursuant to, *inter alia*, INBE's contractual obligations to Konala.

The Clerk's Entry of Default Judgment against INBE occurred on July 12, 2024 (Dkt. No. 29). INBE has taken no steps to set aside the entry of default judgment.  Accordingly, Konala is entitled to entry of default against INBE as discussed *infra.*

## PROCEDURAL HISTORY

On March 15, 2024, Konala filed a Complaint against defendants Messner Reeves LLP and INBE. (Dkt. 2.)  The Complaint was served on INBE on March 25, 2024, along with a Summons and Consent to Jurisdiction of a Magistrate Judge. (Dkt. 8; *see also* Dkt. 28-1, Exhibit

---

[1] The proposed default judgment has also been emailed in editable format to utdecf_clerk@utd.uscourts.gov.

A, Declaration of Jennifer Schrack Dempsey in Support of Default, ¶¶1-3.)  Pursuant to Federal Rule of Civil Procedure 12(a)(1), INBE's response was due by April 15, 2024, but no response was filed. (Dkt. 28-1, ¶5)

On April 30, 2024, the Court Ordered Konala to amend the Complaint to address jurisdictional issues. (Dkt. 14, 28-1, ¶6.) Konala filed its First Amended Complaint (the "Complaint") on May 10, 2024, (Dkt. 15, 28-1, ¶7), and served it on INBE on May 15, 2024, (Dkt. 17, 28-1., ¶8.) INBE's response deadline under Rule 12(a) was June 5, 2024.  (Dkt. 28-1, ¶9.) On June 6, 2024, INBE's purported counsel, Mariah Marey of the law firm Byrd Campbell, requested and was granted a two-week extension, but no joint motion or response was filed.  After follow-up with Konala's counsel, communication from INBE and its counsel ceased entirely.  (Dkt. 28-1, ¶¶ 11-12.) INBE failed to plead or otherwise defend this action, and upon Konola's Rule 55(a) application, (Dkt. 28), the Clerk of the Court entered a Certificate of Default against INBE on July 12, 2024, (Dkt. 29).

**FACTUAL BACKGROUND**

1.  Konala is a quick service restaurant (QSR) that offers healthy food through a drive through-only model. (Declaration of Trace Miller In Support of Motion for Entry of Default Judgment by the Court ("**Miller Dec.**") at ¶ 2).

2.  In anticipation of the significant growth in the healthy QSR industry, Konala franchised its business model. (*Id.* at ¶ 4.)

3.  In 2023, Konala sought funding to facilitate its franchising opportunities and support its growth. (*Id.*, ¶ 5).

4.     INBE, a venture capital lender and investor, offered Konala its business expansion line of credit ("BELOC") to open a new location. (*Id*., ¶ 6-7). On July 31, 2023, Konala and INBE entered into the BELOC Agreement (the "Agreement"). (*Id*., ¶ 8, Exhibit A.)

5.     The principal terms of the BELOC in the amount of $1.3 million, as stated in the INBE/Konala Term Sheet included: 1) an initial down payment of $325,000 by Konala as an interest control account ("ICA Payment"); 2) a term of 120 months; 3) an interest rate of 6%; and 4) a payment schedule of three equal Advances (or Tranches--33% each) to occur as follows: First Advance: no later than 90 calendar days following confirmation of receipt by INBE of the ICA Payment; Second Advance: 30-45 banking days after the first Advance; Third Advance: 30-45 banking days after the Second Advance.  *(Id*. at ¶ 9). Pursuant to Exhibit C of the Agreement, the BELOC was secured by the assets of Konala. (*Id*. at ¶ 8, Ex. A (Exhibit I thereto).)

6.     Pursuant to Section 10.12 of the Agreement, INBE made representations and warranties to Konala that INBE had the financial ability to fund the BELOC on the terms and conditions set forth in the BELOC Agreement and INBE/Konala Term Sheet. Konala relied on these representations and warranties to move forward with INBE's BELOC Agreement so that it could expand its operations to keep pace with the growing demand. (*Id*., ¶ 8, Exhibit A; ¶ 10.)

7.     Per the Agreement, Konala expected regular communication with INBE and ongoing open access to its appointed INBE representatives. (*Id*., at ¶ 8, Exhibit A (Exhibit F thereto)).

8.     Konala was to receive the full amount of the INBE BELOC ($1.3 million less an establishment cost of $117,000) approximately 7.5 months after Konala paid the ICA Payment. (*Id*., ¶ 11).

9.     On August 1, 2023, Konala directed the ICA Payment in the amount of three hundred and twenty-five thousand dollars ($325,000.00) to be wired to the Trustee Messner Reeves LLP – COLTAF Paymaster ("Messner"), pursuant to Section 3.6 and Exhibit F of the Agreement. (the "Konala ICA Payment"). (*Id.*, ¶ 8, Exhibit A (Exhibit F thereto); ¶ 12).

10.     On August 3, 2023, INBE confirmed receipt of Konala's ICA Payment. (*Id.* at ¶ 13).

11.     Pursuant to the Agreement, Konala anticipated it would receive the full amount of the BELOC disbursement by mid-February 2024. (*Id.* at ¶ 14) Over the course of the following months, Konala met all other conditions precedent required by the Agreement to receive INBE's disbursement of the first Advance. Thus, according to Section 7.1 of the Agreement, INBE was obligated to pay the first Advance to Konala on or around November 1, 2023, with the later Advances to be paid over the course of the following 4.5 months. (*Id.* at ¶ 15.)

12.     In reliance on the Agreement and INBE's promises, Konala prepared to launch a new location at 1423 W. Appleway Avenue, Coeur d'Alene, Idaho. ("Konala 1423 Appleway site").(*Id.* at ¶ 16).

13.     Konala anticipated this new location would generate gross revenue streams in excess of one-million dollars ($1,000,000) per year, greater than the revenue generation at the Konala Post Falls location. (*Id.* at ¶¶ 16, 23.)

14.     The Konala 1423 Appleway site was at an optimal location: it had better ingress and egress to the site and had an important anchor tenant, Winco, that would drive more customers and business to the Konala 1423 Appleway site than had been experienced at the Konala Post Falls site.  (*Id.* at ¶ 17).

15.   For this new location, Konala engaged architects, contractors, and other professionals to begin construction.  (*Id.* at ¶ 18-19). In particular:

- Konala retained HDG Architecture to design the Konala 1423 Appleway site. HDG completed the work as contracted and Konala paid HDG a total amount of $18,813.00. (*Id.* at ¶ 19, Exs. B, C).

- Konala retained Xtreme Cubes Corp ("XCC") to design and deliver the steel frame modular cube construction utilized for Konala's sites. While Konala was able to terminate the full contract with XCC (totaling $576,973.31) once it became clear that INBE breached its BELOC Agreement and would not provide the funding, by that time, Konala had already incurred certain design, engineering, and soft costs in the total amount of $18,610.00. (*Id.* at ¶ 20, Exs. D, E).

- Konala entered into a ground lease  with the owner of the real property on which the Konala 1423 Appleway site would sit. The ground lease was for new construction of the Konala 1423 Appleway site and included a financing contingency, which required Konala provide proof that it had access to adequate funds to finance Konala's improvements. Konala made a deposit of $10,000 toward this ground lease after INBE's BELOC Agreement initially satisfied the financing contingency.  (*Id.* at ¶ 21, Ex. F.)

16.   By early fall 2023, Konala was on target to open the Konala 1426 Appleway site in January 2024--so long as the funding promised by INBE came through.  (*Id.* at ¶ 22.)

17.   Notwithstanding that Konala had made the ICA Payment and met all its contractual obligations and promises, INBE never made the first Advance, or any other Advances, to Konala as required by the Agreement.  (*Id.* at ¶ 24.)

18.   Additionally, INBE never responded to Konala's repeated requests for information or otherwise responded in any way to Konala's several attempts to communicate or correspond with it, in direct breach of its representations in the Agreement.  (*Id.* at ¶ 8, Ex. A (Exhibit F thereto), ¶ 25.)

19.     Due to INBE's breaches and ongoing silence, and to hedge against any further loss, Konala had no choice but to terminate the Agreement and attempt to mitigate its already significant losses by seeking return of the $325,000 ICA Payment.  (*Id.* at ¶ 26.)

20.     Immediate return of the Konala ICA Payment would have allowed Konala to obtain alternative financing to satisfy the ground lease's financing contingency and finalize construction of the Konala 1423 Appleway site.  (*Id.* at ¶ 27.)

21.     On December 8, 2023, Konala delivered to INBE written notice of termination in the form and manner required by Section 13.7 and Exhibit E of the Agreement. (*Id*. at ¶ 28, Exhibit G).

22.     Pursuant to the termination clause of Section 13.7 of the Agreement, INBE had ninety (90) calendar days from the date of receipt of the termination notice within which to return Konala's ICA Payment. (*Id.* at ¶ 8, Exhibit A, pp. 24-25; ¶ 29.)

23.     Likewise, under Exhibit F of the Agreement, INBE had ninety (90) calendar days to reimburse the full amount of Konala's ICA Payment if Messner was unwilling or unable to return the funds. (*Id.* at ¶ 8, Exhibit A (Exhibit F thereto); ¶ 29.) INBE thus had until March 10, 2024, to return the Konala ICA Payment and release any security interests. (*Id.* at ¶ 30.)

24.     Having heard nothing from INBE since delivery of the termination notice, on February 15, 2024, Konala made demand upon Messner for return of the Konala ICA Payment that it was holding as Trustee.  (*Id.* at ¶ 31.)

25.     Despite repeated attempts to communicate with both INBE and Messner about the Konala ICA Payment, neither INBE nor Messner ever responded to Konala and never returned the Konala ICA Payment.  (*Id.* at ¶ 32-33.) INBE never made any of the three BELOC Advances to Konala. (*Id.* at ¶ 34.)

26.     Without the INBE BELOC funds or return of the Konala ICA Payment, Konala could not satisfy the financing contingency in the ground lease and was unable to continue with its expansion to the Konala 1423 Appleway site.  (*Id.* at ¶ 35.)

27.     Konala ultimately lost not only the Konala ICA Payment but also the 1423 Appleway location, the expenses Konala had already paid for this location (as set forth above), and the significant profits the Konala 1423 Appleway site would have generated had it opened as planned in January 2024. (*Id.* at ¶ 36.)

28.     Nonetheless, to keep its other operations afloat, Konala scrambled and was ultimately able to mitigate some of these losses.  (*Id.* at ¶ 37.)

29.     A site that had a building on it that could readily be renovated, located at 106 E. Appleway Ave, Coeur d'Alene, ID, was found (the "Konala 106 Appleway site").  (*Id.* at ¶ 38.)

30.     While the Konala 106 Appleway site is in the same city as the Konala 1423 Appleway site, its location is not as optimal: it attracts less foot traffic, lacks an anchor tenant like Winco, and it is not situated or visible from the freeway, like the Konala 1423 Appleway site would have been.

31.     Even though the location was less desirable than the Konala 1423 Appleway site, Konala had no choice but to proceed with it in order to mitigate the substantial losses resulting from INBE's failure to return Konala ICA Payment and INBE's failure to make advances pursuant to the BELOC Agreement. (*Id.* at ¶ 39.)

32.     In addition to having to settle on a less optimal location, Konala essentially had to start over, spending time and money to renovate the new second location, incurring engineering, design, and lease expenses it had already incurred for the Konala 1423 Appleway site.  (*Id.* at ¶ 40.)

7

33.     After INBE failed to provide any of the advances required by the Agreement and failed to return Konala's ICA Payment, Konala – despite extraordinary efforts to mitigate – still faced an eight-month delay in opening the Konala 106 Appleway site, which did not open until September 2024.  (*Id.* at ¶ 40.)

34.     As shown further in the Declaration of Trace Miller, submitted herewith, the profit and loss statements from the Konala Post Falls site from January 2024 through September 2024 show that this site generated average total monthly sales in the amount of $136,405.10. (Total Sales of $1,091,241/8 = $136,405.10) From January through August 2024, the Konala Post Falls site generated average monthly net revenue in the amount of $47,104.93. (*Id.* at ¶ 42, Exhibit H.)

35.     Since opening the Konala 106 Appleway site on August 23, 2024, as of September 12, 2024, Konala has generated total sales in the approximate amount of $163,000.00, exceeding the Konala Post Falls site's average total monthly sales by close to $30,000.

36.     The Konala 106 Appleway site will continue to perform as well as, if not better than, the Konala Post Falls site. (*Id.*)

37.     By all business metrics, the lost Konala 1423 Appleway site would have performed even better than the Konala 106 Appleway site. (*Id.*)

38.     Based on the conservative profit margins from the Konala Post Falls site, however, Konala has lost profits in an amount no less than $376,839.40 ($47,104.03 x 8) because of INBE's (and Messner's) breaches and failures. (*Id.* at ¶ 43.)

39.     Konala not only lost the optimal location and profits of the Konala 1423 Appleway site, but Konala was also forced to sell off real property located at 702 Spokane St., Post Falls, Idaho ("Post Falls real property") and a restaurant – the Bunker Bar – at a significantly reduced

value to cover the note owed to the lender for Konala's ICA Payment and to meet payroll and other ongoing expenses of Konala. (*Id.* at ¶ 45-47.)

40.     The Bunker Bar business was sold for $750,000.00, a "fire sale" price that should have sold for closer to $1 million had Konala not been pressured into the sale in order to cover the losses caused by INBE. (*Id.* at ¶ 45.)

41.     Likewise, Konala was forced to accept a lower price for the Post Falls real property. This property was sold for $3,000,000.00. At the time of the sale, this property was listed for $4,000,000.00. After Konala accepted that offer, and while under contract, Konala received a higher offer of $3,500,000.00. With more time to market the property and seek buyers, Konala could have received, at a minimum, based on the higher offer, an additional $500,000.00 for this property. (*Id.* at ¶ 46.)

42.     Had the BELOC funds been provided or the ICA Payment returned in a timely manner, Konala would have been able to open the Konala 1423 Appleway site in January 2024 and would not have had to sell the Bunker Bar or the Post Falls real property. (*Id.* at ¶ 48.) As outlined in more detail in the Declaration of Trace Miller, Konala has been damaged in an amount exceeding $1.5 million.

## <u>ARGUMENT</u>

Under Federal Rule of Civil Procedure 55, there are generally two separate steps in concluding a case by default. *Meyers v. Pfizer, Inc.*, 581 F. App'x 708, 710 (10th Cir. 2014). First is the entry of default by the clerk under Fed. R. Civ. P. 55(a). This step has already occurred. Once default is entered under Rule 55(a), a party may apply for entry of default judgment under Fed. R. Civ. P. 55(b). In this case, as the sum is not sufficiently certain for Clerk computation,

Konola proceeds under subsection (b)(2) and has therefore submitted this application to the Court for entry of Default Judgment.

As a judgment must be supported by a sufficient basis in the pleadings, *Tripodi v. Welch*, 810 F.3d 761, 765 (10th Cir. 2016), factors relevant to granting a default judgment include the merits of plaintiff's substantive claim and the sufficiency of the complaint. *Id.* "If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *United States v. Just.*, No. 05-CV-00820-TS, 2006 WL 1402197, at *1 (D. Utah Apr. 4, 2006) *citing* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2688 (3d ed.1998). *See United States v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006) (unpublished). The Court examines whether the facts pleaded in the complaint supporting the allegations, deemed true after default, form the basis for a cognizable claim. *See id.; see also Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) ("Once default is entered, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action.") On the question of damages, the Court has discretion to take evidence, conduct hearings, or make other referrals in order to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly. *See Lucero v. Bd. of Directors of Jemez Mountains Coop., Inc.,* 495 F. Supp. 3d 1135, 1159 (D.N.M. 2020). *See* Fed. R. Civ. P. 55(b)(2)(B) ("The court may conduct hearings or make referrals ... when, to enter or effectuate judgment, it needs to ... determine the amount of damages.").

It is also appropriate for the Court to examine whether a defaulting party has indicated a desire to contest the action and whether a plaintiff is prejudiced by delay. *See Miller v. Oklahoma Dep't of Hum. Servs.*, No. 23-6119, 2024 WL 2828863, at *4 (10th Cir. June 4, 2024). *See, e.g., Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (outlining factors considered in the 9th

Circuit). Despite their unfavored status, default judgments are nevertheless appropriate, "where the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection." *In re Rains,* 946 F.2d 731, 732–33 (10th Cir. 1991).

## I.     Default Judgment Should be Entered Against INBE

### A.     The Complaint States Meritorious Claims

In examining the propriety of a default judgment, the court deems the factual allegations of the complaint as true (except on the question of damages) and determines whether the facts plead in the complaint support the allegations. *See Tripodi,* 810 F.3d at 765. The Complaint alleges four counts against INBE: (1) Breach of Contract (Count One); (2) Restitution Based on Quasi Contract/Unjust Enrichment (Count Five); (3) Rescission (Count Six); and (4) Consumer Protection (Count Seven). The Restitution and Rescission counts are plead in the alternative to the Breach of Contract count. Each count is sufficiently pleaded and meritorious.

#### 1.     Breach of Contract (Count One)

The facts in Konala's Complaint strongly support the Breach of Contract claim brought against INBE. In Utah, the necessary elements of a breach of contract claim are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages. *See Hiatt v. Brigham Young Univ.,* 512 F. Supp. 3d 1180, 1184 (D. Utah 2021).

In the Complaint, Konala alleged the details of a valid contract entered into between the INBE and Konala – an Agreement signed on July 31, 2023. (Dkt. 15, ¶¶ 13, 45; Miller Dec. ¶ 8, Ex. A .) Konala outlined the manner in which it performed all covenants under the Agreement, including making the ICA Payment of three hundred thousand and twenty-five dollars

($325,000.00) to INBE's, the receipt of which INBE confirmed (Dkt. 15, ¶¶ 18, 26, 46; Miller Dec. ¶¶12-15.) Over the course of the following months, Konala met all other conditions precedent required by the Agreement to receive INBE's disbursement of the first Advance. (Dkt. 15., ¶ 27, 46, 53, 54; Miller Dec. ¶15, 24.) When INBE failed to provide the funds under the Agreement, Konala followed the contractual procedure for terminating the contract and demanding the return of ICA Payment. (Dkt. 15, ¶¶ 33, 48; Miller Dec. ¶26, 28, 31.)

The Complaint then outlines INBE's numerous breaches of the Agreement, including: failure to provide any of the contracted funds (Dkt. 15, ¶¶ 29, 47, 55); failure to uphold its covenant to communicate (*id.,* ¶¶ 30, 32, 51, 52, 56); misrepresentation of its ability to provide the funds (*id.,* ¶31); failure to return Konala's ICA Payment within the 90-day contractual period (*id.,* ¶¶ 34, 35, 50, 57); failure to release its security interest in Konala's property (*id.,* ¶¶ 35, 58); and failure to recover the ICA Payment from Messner (*id.,* ¶¶ 49, 50, 57).  Konala also pleaded damages in the Complaint, (*id.,* ¶¶ 28, 35, 38, 39 60, 61), which are further supported as discussed below, *infra* II. Taking the allegations as true, as required in cases of default, Konala has more than adequately pleaded and supported its cause of action for Breach of Contract against INBE.

### 2. Restitution Based on Quasi Contract/Unjust Enrichment (Count Five)

As an alternative to its breach of contract claim, Konala pleaded a cause of action for restitution based on quasi-contract and unjust enrichment, should the Court determine a contract does not exist. While a contract exists between the parties (which INBE is deemed to have admitted by failing to appear), a contract may also be implied in law if the defendant (1) received a benefit, (2) appreciated or had knowledge of this benefit, and (3) retained the benefit under circumstances that would make it unjust for the defendant to do so. *See Jones v. Mackey Price Thompson & Ostler*, 355 P.3d 1000, 1012 (Utah 2015).

Konola has effectively pleaded this valid alternative claim.  INBE received a benefit, i.e., the $325,000 ICA Payment, (Dkt. 15, ¶¶ 18, 26, 132), which INBE knowingly accepted and confirmed receiving. (Dkt. 15, ¶¶26, 133). Despite failing to provide the BELOC funds as contractually required or returning, or causing to be returned, the ICA Payment upon the Agreement's termination, INBE has retained the ICA Payment for more than a year. (Dkt. 15, ¶29, 34, 35, 36, 39). Holding the funds without justification and without fulfilling its contractual obligations creates an unjust situation for INBE to retain the ICA Payment. Should the Court find a deficiency in Konala's Breach of Contract claim (though none exist), it should alternatively determine that Konala is entitled to restitution of the ICA Payment on the basis of quantum meruit/unjust enrichment.

### 3.   Rescission (Count Six)

As an alternative to its breach of contract claim and restitution based on quasi contract/unjust enrichment, Konala pleaded a cause of action for rescission of any and all contractual agreements between Konala and INBE and a refund of all money, property, and value that Konala conferred on INBE.

Konola has effectively pleaded this valid alternative claim.  The goal of rescission is to restore the status quo that existed prior to the parties' agreement. *See Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.,* 850 P.2d 447, 457 (Utah 1993) (citation omitted); *see also Breuer–Harrison, Inc. v. Combe,* 799 P.2d 716, 731 (Utah Ct.App.1990) ("Rescission is a restitutionary remedy which attempts to restore the parties to the status quo to the extent possible or as demanded by the equities in the case.") Rescission is justified when a material breach that defeats that very object of the contract has occurred. *See Cross v. Olsen*, 303 P.3d 1030, 1035 (Utah App. 2013). Here, there is no need for the Court to weigh considerations of mutual equity, as Konala is the sole party that has

suffered a loss, while INBE is the only party that has unjustly profited. *Cf. Young H2ORE LLC v. J&M Transmission LLC*, 543 P.3d 1264, 1273 (Utah 2024). There can be no doubt that a material breach, undermining the very purpose of the contract, has occurred, as INBE has utterly failed to perform, including: (1) its complete failure to provide any of the funds it was contractually obligated to deliver (Dkt. 15*, ¶¶* 29, 47, 55); (2) failing to honor its covenant to maintain communication (*id., ¶¶* 30, 32, 51, 52, 56); (3) misrepresenting its ability to provide the contracted funds (*id., ¶*31); (4) failing to return the ICA Payment to Konala within 90-day period stipulated by the Agreement; (*id., ¶¶* 34, 35, 50, 57); (5) refusing to release the security interest in Konala's property as required under the Agreement (*id., ¶¶* 35, 58); and (6) neglecting to recover the ICA Payment from Messner (*id., ¶¶* 49, 50, 57.)

In determining an appropriate rescissionary remedy, the Court must examine what is necessary to fully restore the parties to the status quo at the time the parties entered into the contract. *See Anderson v. Doms*, 984 P.2d 392, 398 (Utah App. 1999). This restoration would certainly require the return of the ICA Payment. *See Bergstrom v. Moore*, 677 P.2d 1123, 1125 (Utah 1984). In fashioning an appropriate remedy for rescission, the trial court has discretion to ensure the aggrieved party is adequately compensated for its loss. *See Ong Int'l (U.S.A.) Inc.,* 850 P.2d at 457 (Utah 1993). Thus, in this case, returning the parties to the status quo goes beyond simply returning the ICA Payment to Konala:  It also necessitates the reimbursement of the expenses Konala incurred in reliance on INBE's promises and compensation for the financial losses Konala suffered when forced to sell certain property at a loss to cover those expenses. Konala is entitled to be restored not only for the ICA Payment, but also for the consequential financial detriment caused by INBE's breach.  *See id.* at 457 (allowing rescission and consequential damages).

### 4.   Consumer Protection (Count Seven)

Finally, the allegations in Konala's Complaint substantiate the consumer protection claim against INBE under Utah law.  The relevant provisions are found in Utah Code §§ 13-11-1 through 13-11-23. In particular, Konala pleaded the necessary elements under Sections 13-11-4 (deceptive act or practice by a supplier) and 13-11-5 (unconscionable act or practice by supplier). Section 13-11-4(1) provides that "(1) A deceptive act or practice by a supplier in connection with a consumer transaction violates this chapter whether it occurs before, during, or after the transaction." Section 13-11-5(1) states that "An unconscionable act or practice by a supplier in connection with a consumer transaction violates this act whether it occurs before, during, or after the transaction."

To state a claim under the Utah Consumer Sales Practices Act ("UCSPA"), a plaintiff must establish: (1) a deceptive or unconscionable act or practice, *Fell v. Alco Capital Group LLC*, 538 P.3d 1249 (Utah 2023); *Martinez v. Best Buy Co., Inc.,* 283 P.3d 521 (Utah 2012); (2) done in connection with a consumer transaction, *Holmes v. American States Ins. Co*., 1 P.3d 552 (Utah 2000); (3) committed by a supplier, *id.*; (4) loss or damage suffered as a result of the violation, *Andreason v. Felsted*, 137 P.3d 1 (Utah 2006); and (5) the supplier intentionally or knowingly engaged in the deceptive act or practice. *Martinez v. Best Buy Co., Inc*., 283 P.3d 521 (2012)

Under Utah Code § 13-11-3(6), a supplier is "a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not they deal directly with the consumer." Konala pleaded these elements in Paragraphs 12, 13, 15, 16, and 150 of the Complaint, establishing that INBE operates as a lender engaged in the business of soliciting and providing business funding

A consumer transaction is defined as "a sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and

intangible (except securities and insurance) to, or apparently to, a person for purposes that relate to a business opportunity that requires: (A) expenditure of money or property by the person … and (B) the person … to perform personal services on a continuing basis and in which the person … has not been previously engaged." Utah Code § 13-11-3(2)(a)(ii). Konala pleaded these elements in Paragraphs 13, 14, 18, 26, 27 and 150 of the Complaint.  INBE's promise to provide a financial service with a business line of credit to Konala involved the transfer of an intangible asset – credit funds, from INBE to Konala.  Furthermore, Konala entered into the transaction with INBE explicitly for business financing to support Konala's ongoing commercial operations. The BELOC was intended to facilitate Konala's ability to secure capital and grow its business, establishing the required "business opportunity."  The facts further establish that, in reliance on INBE's promised line of credit, Konala provided the $325,000 ICA Payment as consideration and underscores Konala's reliance on INBE's commitment to provide funds.  Finally, in furtherance of the new funding arrangement, Konala was obligated to secure collateral and take additional steps to comply with INBE's conditions to receive funding, effectively requiring ongoing efforts to fulfill INBE's requirements under the Agreement.

Paragraphs 29, 31, 36, 39, and 152 of the Complaint clearly allege that INBE engaged in deceptive and unconscionable practices in violation of the UCSPA by: (1) knowingly and/or intentionally mispresenting and warranting its ability to fund the Advances; (2) failing, after receipt of the ICA Payment, to provide the funding of the Advances within the time represented and required by the Agreement; and (3) by wrongfully retaining the ICA Payment despite Konala's proper demand for its return. In Paragraph 154 Konala further pleaded that INBE knew or had reason to know that these deceptive actions were unconscionable, and that Konala would act in reliance on them by paying the ICA Payment, engaging architects, contractors, and other

professionals to start the construction phase of its business expansion, and making substantial investments toward its franchise launch. Konala also specifies in Paragraph 157, and in more detail below, *infra* II, the damages it suffered as a direct result of these deceptions and unconscionable practices.

### B.    A Default Judgment Protects Konala's Rights.

While default judgments are generally disfavored, they serve an important role in protecting a plaintiff from defendants who choose not to participate in the legal process.  Here, INBE has decided not to appear or respond.  As courts recognize, default judgments are appropriate "where the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay." *In re Rains,* 946 F.2d 731, 732–33 (10th Cir. 1991). INBE has had ample opportunity to respond to this lawsuit but has consistently failed to do so. INBE was served with an initial Complaint and ignored it entirely.   After being served with the First Amended Complaint, INBE's purported counsel requested a two-week extension to respond but then went silent, failing even to submit a proposed motion for additional time. This unresponsiveness, despite INBE's clear awareness of the lawsuit and repeated opportunities to engage, underscore the necessity of a default judgment to prevent further delay and ensure Konala's right to relief.

Konala seeks to recover its $325,000 deposit, for which INBE has provided no  explanation for its whereabouts. As  detailed below, Konala also seeks additional consequential damages, including  $47,423.00 already expended, $750,000.00 in losses from the forced sale of property, and $376,839.40 in lost profits.   These sums are substantial amounts for a small business, and without timely judgment, Konala risks suffering significant prejudice and prolonged delay. There

is no genuine dispute concerning the material facts of this case, and Konala's right to recovery should not be indefinitely postponed by INBE's non-responsiveness.

### C.  Default May be Entered Although Another Defendant Has Appeared.

The fact that co-defendant Messner's liability remains unresolved does not preclude entry of default judgment against INBE. Under Rule 54(b), "the court may direct entry of a final judgment as to one or more, but fewer than all … parties only if the court expressly determines that there is no just reason for delay." *Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) (noting that the court has discretion to enter a default judgment as to less than all defendants). Here, the compelling factors favoring a default judgment against INBE, also support a finding of "no just reason for delay."  *See id.*

Further, there is no likelihood of inconsistent judgments on the merits should the remaining defendant, Messner, ultimately prevail.  *See Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872). Messner has not contested the contract's validity or Konala's contractual entitlement to a refund of its ICA payment; rather, Messner's only defense (with which Konala disagrees) is that it served merely as an intermediary, asserting that liability should fall on INBE. Given this position, uniformity of liability across all defendants is not necessary to ensure justice nor does the factual and legal framework pose a high risk of conflicting judgments.  Courts recognize that such circumstances permit the entry of default judgment without requiring complete adjudication against all parties.  *See Green Oak Hedge Fund, Ltd. v. Hopkinson*, No. 2:06-CV-636 TS, 2008 WL 153772, at *3 (D. Utah Jan. 14, 2008)

## II.     Konala is Entitled to Damages, Interest, and Attorney Fees and Costs

### A.     Konala is entitled to the return of the ICA Payment of $325,000.00 Plus Interest.

A portion of Konala's damages is in fact, a sum certain: the return of the $325,000 ICA Payment plus interest. This amount qualifies as a sum certain because the principle along with interest is readily calculable and can be substantiated through affidavits and documentary evidence. *See Garvey v. Buzznick, LLC*, No. 2:22-CV-00400-DBB, 2023 WL 3766104, at *3 (D. Utah June 1, 2023). As outlined above, Konala provided the $325,000.00 ICA Payment to INBE, via its appointed representative and Trustee Messner, as a condition precedent for the funding that INBE was contractually obligated to provide.  (Dkt. 15, ¶ 18, 25, 26; Miller Dec. ¶ 8, Exhibit A.) The Agreement explicitly required INBE to return the ICA Payment in full and release all security interests granted by Konala to INBE if INBE failed to deliver the promised funding. (Dkt. 15, ¶ 23; Miller Dec. ¶ 8, Exhibit A (at Exhibit F thereto)). If Messner did not return the ICA Payment, INBE was obligated to use best efforts – including legal action – to recover the payment, and to fully reimburse Konala within 90 days (Dkt. 15, ¶ 24, 33, 34, 35; Miller Dec. ¶ 8, Exhibit A (at Exhibits E and F thereto)).  Notwithstanding these clear contractual provisions, INBE has neither refunded the ICA Payment nor released the security interest granted by Konala.

Konala is also entitled to pre-judgment interest on the ICA Payment.  The Agreement defines default broadly, covering any failure to perform under any related terms or documents. Upon default, the ICA Payment accrues interest at a Default Rate of 24%, compounded monthly. (Miller Dec. ¶ 8, Exhibit A (at Exhibit A thereto)). As of the date of this Motion, prejudgment interest has accrued to over $48,000, and continues to increase.

Considering the clear contractual provisions in the Agreement, and the documented amount due, Konala is entitled to the following sum certain:

| Category of Damages | Amount |
| --- | --- |
| Konala ICA Payment-Sum Certain | $325,000.00 |
| Pre-judgment interest at 24% | As calculated |

**B.      Konala is Entitled to Consequential Damages.**

Konala is also entitled to consequential damages under its breach of contract claim or alternatively claims for rescission or violation of the UCSPA.

Under Utah law, damages for a breach of contract aim to restore the injured party to the position it would have been had the breach not occurred.  *See Castillo v. Atlanta Cas. Co*., 939 P.2d 1204, 1209 (Utah Ct.App.1997) (citing 25 C.J.S. Damages §§ 1, 3 (1966). This includes consequential damages, while not automatic,  were reasonably foreseeable by the parties at the time the contract was entered into. *See Mahmood v. Ross*, 990 P.2d 933, 937 (Utah 1999). To recover consequential damages, the non-breaching party must prove (1) the breach caused the consequential damages; (2) the consequential damages were foreseeable at the time the parties contracted; and (3) the consequential damages can be proven with reasonable certainty. *Id.*

In fashioning an appropriate remedy for rescission, the trial court has discretion to fashion an adequate and reasonable remedy so that an aggrieved party is adequately compensated for its loss. *Ong Int'l (U.S.A.) Inc.,* 850 P.2d at 457. Thus, returning the parties to the status quo in this case would not only include the return of the ICA Payment to Konala, but also reimbursement for the expenses that Konala incurred and damages suffered in reliance on INBE's promises. Here, Konala incurred damages—including architectural and engineering expenses, lost profits, and fire-sale losses on other assets—that were the foreseeable and direct result of INBE's failure to perform under the Agreement.

Under the UCSPA, "[a] consumer who suffers loss as a result of a violation of [the UCSPA] may recover ... actual damages or $2,000, whichever is greater, plus court costs." Utah Code Ann. § 13–11–19(2) (2005). In other words, under section 13–11–19, a consumer can bring a private action when the Act has been violated and when the consumer can show he suffered a "loss" that is causally connected to the violation. *See Andreason*, 137 P.3d at 4 (Utah 2006).

As alleged in the complaint, the Agreement was specifically designed to provide funding for Konala's business expansion and the construction of a new location. (Dkt. 15, ¶ 25.) Had INBE either funded the BELOC or promptly returned the ICA Payment, Konala would have avoided or mitigated its loss. (Miller Dec. ¶ 48.)  Instead, Konala suffered substantial and foreseeable damages related to architectural and engineering expenses, a lost deposit for the Konala 1423 Appleway location, lost profits from an eight-month delay caused by a "forced" pivot to the less-optimal 106 Appleway site, and the fire-sale losses from liquidating other Konala properties and resources to stay afloat. These damages flowed directly and foreseeably from INBE's breach of the Agreement and wrongful conduct. Accordingly, Konala should be awarded the following consequential damages:

| **Category of Damages** | **Amount** |
|---|---|
| HDG Architecture | $18,813.00 |
| XCC Design and Engineering | $18,610.00 |
| Lost Lease Deposit | $10,000.00 |
| Lost Profits | $376,839.40 |
| Lost Value for Fire Sale of Bunker Bar | $250,000.00 |
| Lost Value for Fire Sale of Bunker Bar Property | $500,000.00 |
| **TOTAL DAMAGES** | **$1,499,262.40** |

**C.      Konala is Entitled to Attorney Fees and Costs**

As stated in the Complaint, Konala is also entitled to Attorney Fees and Costs under the Agreement, which contains a fee-shifting clause, Utah Code §§ 78B-5-825, 78B-5-826, 13-11-19(5), and pursuant to Federal Rule of Civil Procedure 54. Konala's counsel affirms that they will not share any legal fee, as to any count, in violation of Utah Rule of Professional Conduct 5.4. Pursuant to District of Utah Local Civil Rule 54-2, Konala will submit its motions for costs and attorney's fees within 14 days of the entry of a final default judgment.

**CONCLUSION**

In accordance with Federal Rule 55(b)(2) and DUCivR 55-1 , Konala respectfully requests that the Court enter the proposed Default Judgment attached hereto as Exhibit A against Defendants INBE and in favor of Konala, and award Konala damages in excess of $1.5 million.

DATED this 20th of November 2024.

**KIRTON MCCONKIE**

*/s/ Julie E. Kenworthy*
Julie E. Kenworthy (9536)
36 South State Street, Suite 1900
Salt Lake City, UT 84111
Telephone: (801) 328-3600
jkenworthy@kmclaw.com

**DEMPSEY FOSTER PLLC**

*/s/ Jennifer Schrack Dempsey*
Jennifer Schrack Dempsey, ISB No. 7603
Admitted pro hac vice
714 W. State Street
Boise, ID 83702
Telephone: (208) 401-9533
jen@dempseyfoster.com
Attorneys for Plaintiff Konala, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of November 2024, I served the foregoing on

the following parties in the manner indicated below:

**CM/ECF REGISTERED PARTICIPANT:**

Andres M. Hermosillo
**GORDON REES SCULLY MANSUKHANI, LLP**
555 Seventeenth Street, Ste. 3400
Denver, CO 80202
ahermosillo@grsm.com

**NON-CM/ECF REGISTERED PARTICIPANT VIA FIRST CLASS MAIL, POSTAGE PREPAID, AND EMAIL TO:**

**INBE Capital LLC**
30 N. Gould Street
Sheridan, WY 82801
craig@theinbegroup.com

**INBE Capital LLC**
Attn: Buffalo Registered Agents LLC
412 N. Main St. Ste 100
Buffalo, WY 82834

*/s/ Sherry Glendening*
Sherry Glendening