Julie E. Kenworthy (9536)
Qiwei Chen (18333)
**KIRTON MCCONKIE**
36 South State Street, Suite 1900
Salt Lake City, UT 84111
Telephone: (801) 328-3600
Facsimile: (801) 321-4893
jkenworthy@kmclaw.com

Jennifer Schrack Dempsey (ID Bar No. 7603)
DEMPSEY FOSTER PLLC
714 West State Street
Boise, ID 83702
Telephone: (208) 401-9533
Email: jen@dempseyfoster.com

*Attorney for Plaintiff Konala LLC*

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| KONALA, LLC, an Idaho limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MESSNER REEVES LLP, a Colorado limited liability partnership; and INBE CAPITAL LLC, a Wyoming limited liability company,<br><br>Defendants. | **SECOND AMENDED COMPLAINT**<br><br>**JURY DEMANDED**<br><br>Case No.: 2:24-cv-00195-HCN<br><br>District Judge Howard C. Nielson, Jr. |

Plaintiff Konala LLC ("Konala") brings this action against Defendants Messner Reeves LLP ("Messner") and INBE Capital LLC ("INBE"), stating as follows:

## PARTIES

1. Plaintiff Konala LLC is an Idaho limited liability company with a principal place of business in Post Falls, Idaho. At the time of the filing of the original complaint and at the present time, Konala LLC's sole member, Trace Miller, resides in, is domiciled in, and is a citizen of the state of Idaho.

2. Based on publicly available information, including but not limited to, Messner's website https://messner.com/ and the business social media platform LinkedIn, Plaintiff alleges the following with respect to the citizenship of the partners of Defendant Messner, on information and belief:

   a. Defendant Messner is a Colorado limited liability partnership of 129 attorneys but that, on information and belief, in certain circumstances serves as a trustee, escrow holder, and/or agent rather than as attorneys. Messner has offices in Costa Mesa, California; San Jose, California; Reno, Nevada; Las Vegas, Nevada; Phoenix, Arizona; Salt Lake City, Utah; Denver, Colorado; Greenwood Village, Colorado; Colorado Springs, Colorado, and New York City, New York.

   b. Messner's Salt Lake City, Utah office is located at 65 East Wadsworth Park Drive, Suite 110, Draper, Utah. Three Messner partners are licensed to practice in Utah and do practice out of the Salt Lake City, Utah office. Upon information and belief two of those partners, Andrew R. Welch and Torben M. Welch, reside in, are domiciled in, and are citizens of the state of Utah.

      i. None of Messner's partners reside in, are domiciled in, or are citizens of the state of Idaho but are instead residents, domiciliaries, and citizens of California, Nevada, Arizona, Utah, Colorado, and/or New York. The

partners of Messner at the time of the original complaint and currently are as follows:

1. Caleb Meyer, CEO. His listed locations of practice are Denver, Colorado, Greenwood Village, Colorado, and Las Vegas, Nevada. Upon information and belief, he is a citizen and domiciliary of the State of Colorado.
2. Michelle L. Harden, COO & Managing Partner. Her listed location of practice is Denver, Colorado. Upon information and belief, she is a citizen and domiciliary of the State of Colorado.
3. Renne M. Finch, CSO and Partner. Her listed location of practice is Las Vegas, Nevada. Upon information and belief, she is a citizen and domiciliary of the State of Nevada.
4. David A. Reeves, Managing Partner. His listed location of practice is Greenwood Village, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.
5. Benjamin Tietgen, Partner. His listed location of practice is Phoenix, Arizona. Upon information and belief, he is a citizen and domiciliary of the state of Arizona.
6. Darren D. Alberti, Partner. His listed location of practice is Denver, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.
7. Kate A. Bailey, Partner. Her listed location of practice is Denver, Colorado, Greenwood Village, Colorado and Salt Lake City, Utah.

Upon information and belief, she is a citizen and domiciliary of either the state of Colorado or the State of Utah.

8. Brenda L. Bartels, Partner. Her listed location of practice is Colorado Springs, Colorado. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.
9. Alex Beltz, Partner. His listed location of practice is Greenwood Village, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.
10. Amber L. Blasingame, Partner. Her listed location of practice is Colorado Springs, Colorado. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.
11. Brett A. Boon, Partner. His listed location of practice is Costa Mesa, California. Upon information and belief, he is a citizen and domiciliary of the state of California.
12. Valerie D. Bromley, Partner, whose listed location of practice is Greenwood Village, Colorado. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.
13. Edgar Carranza, Partner. His listed location of practice is Las Vegas, Nevada. Upon information and belief, he is a citizen and domiciliary of the state of Nevada.
14. Kathleen Carter, Partner. Her listed location of practice is Costa Mesa, California. Upon information and belief, she is a citizen and domiciliary of the state of California.

15. Cynthia T. Carucci, Partner. Her listed location of practice is Costa Mesa, California. Upon information and belief, she is a citizen and domiciliary of the state of California.
16. Charles C. Cavanagh, Partner. His listed location of practice is Denver, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.
17. Laura Chartrand, Partner. Her listed location of practice is Denver, Colorado. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.
18. Gregory B. Cohen, Partner. His listed location of practice is San Jose, California. Upon information and belief, he is a citizen and domiciliary of the state of California.
19. Kimberley P. Cronin, Partner. Her listed location of practice is Denver, Colorado. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.
20. Isaac S. Crum, Partner. His listed location of practice is Phoenix, Arizona. Upon information and belief, he is a citizen and domiciliary of the state of Arizona.
21. Erica M. Deatherage, Partner. Her listed location of practice is Phoenix, Arizona. Upon information and belief, she is a citizen and domiciliary of the state of Arizona.

22. Matthew J. Deenihan, Partner. His listed location of practice is Costa Mesa, California. Upon information and belief, he is a citizen and domiciliary of the state of California.

23. Allison Dodd, Partner. Her listed location of practice is Denver, Colorado. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.

24. Brieanna M. Dolmage, Partner, whose listed location of practice is Costa Mesa, California. Upon information and belief, she is a citizen and domiciliary of the state of California.

25. Patrick G. Drake, Partner. His listed location of practice is Greenwood Village, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.

26. R.J. Ertmer, Partner. His listed location of practice is Greenwood Village, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.

27. Rachel Farr, Partner. Her listed location of practice is Denver, Colorado  Upon information and belief, she is a citizen and domiciliary of the state of Colorado.

28. Mary Bryne Fletcher, Partner. Her listed location of practice is Denver, Colorado. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.

29. Austin J. Gemmell, Partner. His listed location of practice is Denver, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.

30. Matthew W. George, Partner. His listed location of practice is Denver, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.

31. Deanna Gilbertson, Partner. Her listed location of practice is Costa Mesa, California. Upon information and belief, he is a citizen and domiciliary of the state of California.

32. Margaret K. Gray, Partner. Her listed location of practice is Denver, Colorado. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.

33. Scott Hawranek, Partner. His listed location of practice is Colorado Springs, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.

34. Andrew S. Hollins, Partner. His listed location of practice is Costa Mesa, California. Upon information and belief, he is a citizen and domiciliary of the state of California.

35. Amy E. Huff, Partner. Her listed location of practice is Denver, Colorado. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.

36. Craig a. Humphrey, Partner. His listed location of practice is Costa Mesa, California. Upon information and belief, he is a citizen and domiciliary of the state of California.

37. Matt M. Jedrzejek, Partner. His listed location of practice is Costa Mesa, California. Upon information and belief, he is a citizen and domiciliary of the state of California.

38. Maclain Joyce, Partner. His listed location of practice is Denver, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.

39. Idin Kashefipour, Partner. His listed location of practice is Costa Mesa, California. Upon information and belief, he is a citizen and domiciliary of the state of California.

40. Dara Keller, Partner. Her listed location of practice is Denver, Colorado. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.

41. Daniel J. Klett, Partner. His listed location of practice is Las Vegas, Nevada. Upon information and belief, he is a citizen and domiciliary of the state of Nevada.

42. Steven G. Knauss, Partner. His listed location of practice is Las Vegas, Nevada. Upon information and belief, he is a citizen and domiciliary of the state of Nevada.

43. Marjorie E. Kratsas, Partner. Her listed location of practice is Las Vegas and Reno, Nevada. Upon information and belief, she is a citizen and domiciliary of the state of Nevada.

44. Jason G. Martinez, Partner. His listed location of practice is Las Vegas, Nevada. Upon information and belief, he is a citizen and domiciliary of the state of Nevada.

45. Bryant Messner, Partner. His listed location of practice is Denver, Colorao.Upon information and belief, he is a citizen and domiciliary of the state of Colorado.

46. Ian R. Mitchell, Partner. His listed location of practice is Denver, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.

47. Scott Monroe, Partner. His listed location of practice is Costa Mesa, California.. Upon information and belief, he is a citizen and domiciliary of the state of California.

48. Simone M. Montoya, Partner. Her listed location of practice is Denver, Colorado. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.

49. Bruce A. Montoya, Partner. His listed location of practice is Denver and Greenwood Village, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.

50. Kathleen J. Mowry, Partner. Her listed location of practice is Denver, Colorado. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.

51. Christina Mundy, Partner. Her listed location of practice is Las Vegas, Nevada. Upon information and belief, she is a citizen and domiciliary of the state of Nevada.

52. Ann A.P. Nguyen, Partner. Her listed location of practice is San Jose, California. Upon information and belief, she is a citizen and domiciliary of the state of California.

53. Katherine Otto, Partner. Her listed location of practice is Denver, Colorado and New York, New York. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.

54. Jonathan B. Owens, Partner. His listed location of practice is Las Vegas, Nevada. Upon information and belief, he is a citizen and domiciliary of the state of Nevada.

55. Julian Pardo de Zela, Partner. His listed location of practice is San Jose, California. Upon information and belief, he is a citizen and domiciliary of the state of California.

56. Frank J. Perretta, Partner. His listed location of practice is San Jose, California. Upon information and belief, he is a citizen and domiciliary of the state of California.

57. Peter W. Pierce, Partner. His listed location of practice is Costa Mesa, California. Upon information and belief, he is a citizen and domiciliary of the state of California.

58. William D. Randall, Partner. His listed location of practice is Costa Mesa, California. Upon information and belief, he is a citizen and domiciliary of the state of California.

59. Richard Reice, Partner. His listed location of practice is New York, New York. Upon information and belief, he is a citizen and domiciliary of the state of New York.

60. Adam M. Royval, Partner. His listed location of practice is Denver, Colorado and Phoenix, Arizona. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.

61. Heather A. Salg, Partner. Her listed location of practice is Greenwood Village, Colorado. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.

62. Edwin N. Schwartz, Partner. His listed location of practice is Costa Mesa, California. Upon information and belief, he is a citizen and domiciliary of the state of California.

63. Mikhail A. Shah, Partner. His listed location of practice is New York, New York. Upon information and belief, he is a citizen and domiciliary of the state of New York.

64. Greg Sitrick, Partner. His listed location of practice is Phoenix, Arizona. Upon information and belief, he is a citizen and domiciliary of the state of Arizona.

65. Rowan P. Smith, Partner. His listed location of practice is Phoenix, Arizona. Upon information and belief, he is a citizen and domiciliary of the state of Arizona.

66. Aaron N. Soleimani, Partner. His listed location of practice is Costa Mesa, California. Upon information and belief, he is a citizen and domiciliary of the state of California.

67. Heather E. Stern, Partner. Her listed location of practice is Costa Mesa, California. Upon information and belief, she is a citizen and domiciliary of the state of California.

68. John H. Stevens, Partner. His listed location of practice is Denver, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.

69. Deanne R. Stodden, Partner. Her listed location of practice is Denver, Colorado. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.

70. Matthew R. Sullivan, Partner. His listed location of practice is Greenwood Village, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.

71. Jenny L. Thornton, Partner. Her listed location of practice is Greenwood Village, Colorado. Upon information and belief, she is a citizen and domiciliary of the state of Colorado.
72. Wade Warthen, Partner. His listed location of practice is Denver, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.
73. Andrew R. Welch, Partner. His listed location of practice is Salt Lake City, Utah. Upon information and belief, he is a citizen and domiciliary of the state of Utah.
74. Torben M. Welch, Partner. His listed location of practice is Salt Lake City, Utah. Upon information and belief, he is a citizen and domiciliary of the state of Utah.
75. Karie N. Wilson, Partner. Her listed location of practice is Las Vegas, Nevada. Upon information and belief, she is a citizen and domiciliary of the state of Nevada.
76. Douglas C. Wolanske, Partner. His listed location of practice is Denver, Colorado. Upon information and belief, he is a citizen and domiciliary of the state of Colorado.
77. Jon B. Zimmerman, Partner. His listed location of practice is San Jose, California. Upon information and belief, he is a citizen and domiciliary of the state of California.

3. Based on publicly available information, including but not limited to, the Wyoming Secretary of State, INBE’s website (https://theinbegroup.com/), and the business social

media platform LinkedIn, Plaintiff alleges the following with respect to the citizenship of Defendant INBE, on information and belief:

a. INBE is a Wyoming limited liability company with a principal place of business at 30 N. Gould Street, Sheridan, Wyoming.

b. At the time of the original complaint and currently, the Members of INBE were as follows:

i. Craig Boddington, who is domiciled in and is a citizen of the State of Florida.

ii. Jonathan Wright, who is domiciled in and is a citizen of the State of Virginia.

**JURISDICTION AND VENUE**

4. Defendant Messner is subject to general personal jurisdiction in Utah because Messner's contacts with this forum state, including the practice of law in Utah and operation of a Draper, Utah law office, are continuous and pervasive such that it is fair to subject Messner to personal jurisdiction in Utah for all purposes.

5. Defendant INBE is subject to specific personal jurisdiction in Utah because, on information and belief, INBE purposefully availed itself of the forum state's benefits and this controversy is related to or arises out of INBE's contacts with the forum state as it relates to its relationship with and actions involving Messner, and the exercise of personal jurisdiction over INBE would comport with fair play and substantial justice.

6. Diversity jurisdiction exists under 28 U.S.C. § 1332(a).

a. The parties are citizens of different states.

b. As outlined in detail above, Plaintiff is an LLC with a single member, who resides in, is domiciled in, and is a citizen of the state of Idaho. As a limited liability company's citizenship is determined, for purposes of diversity jurisdiction, by the citizenship of all its members, the Plaintiff is therefore a citizen of the State of Idaho.

c. As outlined above, Messner is a limited liability partnership with partners who, detailed above upon information and belief, are residents, domiciliaries, and citizens of either California, Nevada, Arizona, Utah, Colorado, or New York., As a limited liability partnership's citizenship is determined, for purposes of diversity jurisdiction, by the citizenship of all its partners, Defendant Messner is therefore a citizen of California, Nevada, Arizona, Utah, Colorado, and New York.

d. As outlined above, INBE is a limited liability company located and organized in Wyoming. As detailed above upon information and belief, the members of INBE are residents, domiciliaries, and citizens of Florida and Virgina. As a limited liability company's citizenship is determined, for purposes of diversity jurisdiction, by the citizenship of all its members, Defendants INBE is therefore a citizen of Florida and Virginia.

e. Thus, the parties' citizenship is diverse under 28 U.S.C. § 1332(a)(1).

f. The amount in controversy exceeds $75,000.00.

7. Venue is appropriate in this court under 18 U.S.C. § 1391 because one of the attorneys involved in the underlying facts resides and practices in Utah and performed services in Utah that led to the claims in this case; and because one of the defendants is a resident and citizen of Utah doing business in Utah.

## FACTUAL ALLEGATIONS

8. Plaintiff is a quick service restaurant (QSR) that offers healthy food through a convenient drive through-only model.

9. Defendant Messner is a law firm with 129 attorneys with 20 practice groups in 11 offices, including a Utah office that offers banking and financial services. On information and belief, Messner also acts as a trustee, escrow holder, and/or agent in certain financial transactions wherein it is retained as a neutral third party to receive and disburse funds between two parties in accordance with the terms of an agreement outside of a traditional attorney client relationship, and did so at all relevant times herein. On information and belief, Messner used a paymaster account for these transactions instead of a traditional Interest on Lawyer's Trust Account (IOLTA) because it was not acting in an attorney capacity and therefore did not apply the rules of professional conduct and other ethical obligations that govern attorney-client relationship.

10. Defendants INBE are a venture capital lender and investor.

11. In anticipation of the significant growth in the healthy QSR industry, Konala franchised its business model. In 2023, Konala was seeking funding to facilitate its franchising opportunities and support its growth.

12. INBE offered Konala its business expansion line of credit ("BELOC") to open a new location.

13. On July 31, 2023, Konala and INBE entered into the BELOC Agreement, a true and correct copy of which is attached hereto as Exhibit A (the "Agreement"). As generally reflected in the Agreement, INBE agreed to provide Konala a business line of credit for the total amount of one million three hundred thousand dollars ($1,300,000.00), payable in three separate tranches over the course of two hundred and ten (210) days: the first tranche was payable in

ninety (90) days; the second tranche was payable sixty (60) days thereafter; and the third tranche was payable sixty (60) days after the second tranche. The Agreement refers to these tranche disbursements as "Advances."

14. Pursuant to Exhibit C of the Agreement, the BELOC was secured by the assets of Konala.

15. INBE expressly "represented and warranted" its ability to fund the BELOC per Section 10.12 of the Agreement, entitled "Lender's Ability to Fund": "Lender hereby represents and warrants to Borrower that it has the financial ability and wherewithal to fully fund the LOC [line of credit] in the full amount of the Maximum Amount."

16. INBE also confirmed that it "covenants and agrees that it shall fully and timely fund" the BELOC.

17. In Exhibit F to the Agreement, INBE stated that Konala should expect regular communication with INBE and ongoing open access to its appointed INBE representatives.

18. Prior to receipt of the Advances, and pursuant to Section 3.6 and Exhibit F of the Agreement, Konala agreed to deposit three hundred thousand and twenty-five dollars ($325,000.00) ("the ICA Payment") with INBE or one of its "nominated administrative agents for aggregation before being forwarded & held by a nominated Trustee (Attorney) for the purpose of arranging the issuance of a Loan (Line of Credit)." Ex. A (Exhibit F) Exhibit F also directed the ICA Payment to be made by wire transfer to the financial account of Messner, identified as "Messner Reeves LLP – COLTAF Paymaster." Exhibit F contained Messner's bank account information at Northern Trust Company, with a specific account number, and referred to the account as an "Escrow Account." *Id.*

19. On information and belief, Messner was acting in one or more of three roles, and not in its capacity as legal counsel—in connection with this transaction:

a. Messner was the “nominated Trustee (Attorney)” appointed by INBE “for the purpose of arranging for the issuance of a Loan (Line of Credit)” and received Konala’s ICA Payment from INBE or INBE’s nominated agent.

b. Alternatively, or in addition to, Messner agreed to, consented to, approved, and ratified an escrow agreement with INBE, and undertook the duties and responsibilities of an escrow holder for the Escrow Account, either as INBE’s “nominated administrative agent” or in some other capacity through its COLTAF Paymaster account.

c. Alternatively, or in addition to, Messner was acting as an agent of INBE, again either as INBE’s “nominated administrative agent” or in some other capacity through its COLTAF Paymaster account.

20. Upon information and belief, in any one or all of these capacities, Messner was obligated to hold the ICA Payment in its “sole possession and control” and was not permitted to collateralize the ICA Payment “in any manner.” *Id.* Messner was further required to return the ICA Payment “per [Messner’s] contractual obligations with” INBE. *Id.*

21. On information and belief, by accepting INBE’s nomination as Trustee pursuant to Exhibit F of the BELOC, and/or by accepting the ICA Payment into its account, Messner assumed fiduciary duties and responsibilities to Konala as a third party beneficiary of the contract between INBE and Messner for Messner governing Messner’s trustee and/or escrow services.

22. On information and belief, as Trustee and/or escrow holder, Messner owed a fiduciary duty to exercise reasonable skill and ordinary diligence in holding and disbursing funds received by virtue of its role under the BELOC Agreement and its contractual arrangements with INBE.

23. On information and belief, Konala was a third party beneficiary of the contract(s) between Messner and INBE, whether those contracts designated Messner as Trustee, escrow holder, or both. The terms of the contract(s) between INBE and Messner, including Exhibit F, reflect the intent of INBE and Messner to "arrange for the issuance of a Loan (Line of Credit)" (Exhibit F) for the benefit of Konala, and to hold the ICA payment in such a manner that it would be returned to Konala in the event that the BELOC failed to fund.

24. On information and belief, and alternatively, Messner acted as an agent of INBE, with authority to hold the ICA Payment pursuant to the BELOC Agreement and to return the ICA Payment if the BELOC did not fund.

25. Section 13.7 of the BELOC Agreement contains a termination provision allowing Konala to terminate the Agreement in the event INBE failed to make the Advances. Upon termination, INBE—or, on information and belief, Messner, acting as Trustee, escrow holder, and/or agent—was required to refund the ICA Payment in full and release all security interests granted by Konala to INBE.

26. Exhibit F to the Agreement likewise provided that if INBE was unable to fund the Advances under the Agreement, INBE contractually agreed to reimburse Konala the amount of the ICA Payment. Under Exhibit F, INBE was to use its best efforts, including legal efforts, to recover the ICA Payment should Messner fail to return the ICA Payment. However, Exhibit F

further provided that should Messner fail to return the ICA Payment, INBE was to itself reimburse the full amount of the ICA Payment to Konala within 90 days.

27. Konala moved forward with plans to expand its franchise and open a new location, relying on the Agreement and INBE's promise to provide the BELOC.

28. On August 1, 2023, pursuant to an electronic communication received from INBE during the underwriting process, Konala directed its ICA Payment be wired to Messner, acting as INBE's Trustee, escrow holder, and/or agent, in accordance with Section 3.6 and Exhibit F of the Agreement. On August 3, 2023, INBE confirmed receipt of Konala's ICA Payment.

29. Over the course of the following months, Konala met all other conditions precedent required by the Agreement to receive INBE's disbursement of the first Advance. Thus, according to Section 7.1 of the Agreement, INBE was obligated to pay the first Advance to Konala on or around November 1, 2023.

30. In reliance on the Agreement and INBE's promises, Konala prepared to launch another location for its franchise. Among other things, Konala engaged architects, contractors, and other professionals to start the construction phase of its business expansion. Konala expended significant sums as it moved forward with the franchise launch. Konala anticipated this new location would generate revenue streams in excess of one-million dollars ($1,000,000) per year, similar to the revenue generation at its other locations.

31. Notwithstanding its contractual obligations and promises, INBE never made the first Advance, or any other Advances, to Konala as required by the Agreement.

32. INBE never responded to Konala's repeated requests for information or otherwise responded in any way to Konala's several attempts to communicate or correspond with it and has not communicated with Konala since at least November 1, 2023.

33. On information and belief, at the time INBE made promises to Konala and entered the Agreement with Konala, INBE did not have—and still does not have—the financial ability or wherewithal to fund any part, much less the entire amount, of Konala's line of credit as required by Section 10.12 of the Agreement. Yet INBE made representations and warranties to Konala that INBE did have the financial ability to fund the BELOC; Konala did not know, and had no reason to believe, that INBE actually lacked such financial wherewithal.

34. Contrary to its representations in Exhibit F, INBE has failed to provide Konala with regular communication with INBE and ongoing open access to its appointed INBE representatives.

35. Due to INBE's breaches and ongoing silence, and to hedge against any further loss, Konala had no choice but to terminate the Agreement. On December 8, 2023, Konala delivered to INBE written notice of termination in the form and manner required by Section 13.7 and Exhibit E of the Agreement. INBE received the notarized termination letter on December 11, 2023.

36. Pursuant to the termination clause of Section 13.7, INBE had ninety (90) calendar days from the date of receipt within which to return the ICA Payment to Konala. Additionally, under Exhibit F, INBE was obligated to reimburse the full amount of the ICA Payment within ninety (90) calendar days to Konala if Messner failed to return the ICA Payment pursuant to Messner's agreement(s) with INBE and the duties it owed Konala.

37. INBE or Messner thus had until March 10, 2024, to return the ICA Payment or otherwise reimburse the full amount of the ICA Payment and for INBE to release any security interests. As of the date of the filing of this Complaint, the ICA Payment has not been returned

by either INBE or Messner and INBE has failed to release its security interests in the property of Konala.

38. On February 15, 2024, Konala made demand upon Messner for return of the ICA Payment that it was holding as Trustee, escrow holder, or agent. When Messner failed to respond, Konala continued to ask Messner for the return. Messner still has not responded to the demand or additional communications by Konala and has not returned the ICA Payment.

39. On information and belief, because Messner has failed to return the ICA Payment as required by Exhibit F, it has breached its fiduciary duties owed to Konala as Trustee and/or escrow holder under its agreement(s) with INBE or, alternatively, has acted outside the scope of its authority as an agent of INBE.

40. Because of INBE's and Messner's breaches and failures, Konala was unable to open its planned new franchise location, has lost significant profits, and has incurred significant expenses.

41. Messner and INBE continue in their failure to return Plaintiff's $325,000 in escrow which Messner received months ago.

42. Messner and INBE are in default.

43. Exhibit A (Promissory Note) of the Agreement provides that if "[Konala] or any other party fails to meet or perform any other obligation under any term or condition of this Note, the LOC Agreement, any of the other LOC Documents, or any other agreement between [Konala] and [INBE], then this Note shall be in default," for which the Default Rate of Interest is 24%. Further, "[u]ntil cured, interest shall accrue daily after default with daily interest being added to principal on the last day of each calendar month and thereafter compounded to calculate interest on the amounts owed."

44. Messner and INBE owe Plaintiff's attorney fees. The Agreement contains a fee shifting provision, which is bilaterally applied.

45. Plaintiff has been forced to engage counsel and has agreed to pay them reasonable attorney fees.

**COUNT ONE – BREACH OF CONTRACT**
**(Against INBE)**

46. Plaintiff incorporates by reference all prior allegations of this Complaint as if fully set out herein.

47. A valid and binding contract between Plaintiff and INBE exists as set forth in the Business Expansion Line of Credit Agreement and its Exhibits, dated July 31, 2023.

48. Plaintiff fulfilled all conditions precedent for the funding of the BELOC, including making the ICA Payment to Messner.

49. INBE failed to fund the BELOC, contrary to its agreement to do so and its warranties and representations that it has the financial ability and wherewithal to do so.

50. Because INBE did not fund the BELOC and because Plaintiff delivered a Termination in the form and manner required by the Agreement, the Agreement required INBE to effectuate the return of the $325,000 ICA Payment to Plaintiff, to release all security interests by March 10, 2024, and to terminate any obligations that Plaintiff may owe.

51. Moreover, INBE pledged that "in the event [INBE] is unsuccessful at recovering ICA Funds from the Trustee, INBE Capital LLC will step in and reimburse the Borrower the full amount of ICA Funds within 90 days."

52. INBE has failed to effectuate the return of the ICA Payment, whether from Messner or through its own means.

53. INBE pledged that it would provide regular communication with Konala and ongoing open access to Konala's appointed INBE representatives.

54. INBE has failed to communicate with Konala since at least November 1, 2023.

55. Plaintiff has performed all its contractual obligations.

56. All conditions precedent occurred or have been waived.

57. INBE breached the contract by failing to fund the BELOC.

58. INBE breached the contract by failing to communicate with Konala.

59. INBE breached the contract by failing to effectuate the return of the $325,000 ICA Payment within 90 days of its failure to fund the BELOC and/or within 90 days of the termination of the contract by Plaintiff for INBE's failure to fund the BELOC and/or after Messner's failure to return the ICA Payment.

60. INBE breached the contract by failing to release all security interests within 90 days of the termination of the contract by Plaintiff for INBE's failure to fund the BELOC and to terminate any and all obligations that may be owed by Plaintiff under the BELOC.

61. INBE's breach of contract caused the damages Plaintiff sustained.

62. Plaintiff has sustained damages of $325,000.

63. Plaintiff has also sustained incidental and consequential damages.

64. Plaintiff is entitled to recover costs and prejudgment interest.

65. Plaintiff is entitled to recover attorneys' fees under Utah Code § 78B-5-825, which governs fee-shifting in cases where the defense was without merit and not brought or asserted in good faith.

66. Plaintiff is entitled to recover attorneys' fees under Utah Code § 78B-5-826, which allows fee and cost-shifting to a prevailing party in an action based upon written contract

when the contract allows at least one party to recover attorney fees. Exhibit A of the Agreement includes a provision which allows for the recovery of attorney fees for INBE to enforce the terms of, among other things, the BELOC.

**COUNT TWO – BREACH OF CONTRACT**
**(Against Messner as Trustee, Escrow Holder, and/or Agent)**

67. Plaintiff incorporates by reference all prior allegations of this Complaint as if fully set out herein.

68. Valid and binding contract(s) exist between INBE and Messner whereby Messner is Trustee, escrow holder and/or agent whose primary purpose is to ensure the ICA Payment is properly handled for the benefit of Konala.

69. On information and belief, INBE and Messner intended to confer a direct benefit upon Konala at the time they entered into these valid and binding contract(s), as reflected, in part, in Exhibit F to the BELOC Agreement. Thus, Konala is an intended third party beneficiary of these contract(s).

70. On information and belief, as Trustee and/or escrow holder, as set forth in Paragraphs 9 and 18 through 23 above, Messner was obligated to comply with its contractual duties to INBE as it pertains to the holding, possessing, disbursing, or returning Konala's ICA Payment.

71. On information and belief, Messner failed to hold, manage, disburse, or return Konala's ICA Payment as required by its contract(s) with INBE, as its role as Trustee and/or escrow holder.

72. Alternatively, on information and belief, in its capacity as an agent of INBE, Messner acted without authority, in excess of its authority, in a manner that rendered INBE inaccessible or unresponsive, or otherwise acted in bad faith.

73. Plaintiff has performed all its contractual obligations, and all conditions precedent to INBE and Messner's performance have occurred or have been waived.

74. On information and belief, Messner's failure to properly hold, manage, disburse, or return Konala's ICA Payment, as required under its role as Trustee and/or escrow holder, constitutes breach of its contractual obligations with INBE.

75. Messner's breach of its contractual obligations and agreements with INBE directly caused the damages sustained by Plaintiff, as an intended third-party beneficiary.

76. Plaintiff has sustained damages of $325,000.

77. Plaintiff has also sustained incidental and consequential damages.

78. Plaintiff is entitled to recover costs and prejudgment interest.

79. Plaintiff is entitled to recover attorneys' fees under Utah Code § 78B-5-825, which governs fee-shifting in cases where the defense was without merit and not brought or asserted in good faith.

80. Plaintiff is entitled to recover attorneys' fees under Utah Code § 78B-5-826, which allows fee and cost-shifting to a prevailing party in an action based upon written contract when the contract allows at least one party to recover attorney fees. Exhibit A of the Agreement includes a provision which allows for the recovery of attorney fees for INBE to enforce the terms of, among other things, the BELOC. Further, on information and belief, the contract(s) between Messner and INBE include a provision which allows for the recovery of attorney fees to enforce the terms of the contract(s).

81. Plaintiff is also entitled to attorney fees incurred in pursuing its claims against the other Defendant, INBE, as consequential damages because it is reasonably foreseeable that

Messner's breach of contract would cause Plaintiff to incur attorney fees through litigation with INBE.

**COUNT THREE – NEGLIGENCE**
**(Against Messner as Trustee, Escrow Holder, and/or Agent)**

82. Plaintiff incorporates by reference all prior allegations of this Complaint as if fully set out herein.

83. As a Trustee, escrow holder, and/or agent as set forth in Exhibit F to the BELOC Agreement, and by accepting Konala's ICA Payment into its Paymaster account, Messner undertook certain duties to Konala to properly and appropriately hold, manage, disburse, and return Konala's ICA Payment to Konala.

84. Messner breached those duties by acting outside the scope of its agreement and relationship with INBE, and by failing to exercise the care and skill that a person of ordinary prudence would exercise under similar circumstances.

85. Messner further breached its duties to Konala when it acted outside the scope of its agreement and relationship with INBE and failed to hold, manage, disburse, or return Konala's ICA Payment when INBE failed to fund the Advances and Plaintiff provided notice of termination under the BELOC Agreement.

86. Loss of Plaintiff's money was a foreseeable result of Messner's negligence.

87. Messner's negligence caused the damages the Plaintiff sustained.

88. Plaintiff has sustained damages of $325,000.

89. Plaintiff has also sustained incidental and consequential damages.

90. Plaintiff is entitled to recover costs and prejudgment interest.

91. Plaintiff is entitled to recover attorneys' fees under Utah Code § 78B-5-825, which governs fee-shifting in cases where the defense was without merit and not brought or asserted in good faith.

92. Plaintiff is also entitled to attorney fees incurred in pursuing its claims against the other Defendant, INBE, as consequential damages because it is reasonably foreseeable that Messner's breach of contract would cause Plaintiff to incur attorney fees through litigation with INBE.

## COUNT FOUR – BREACH OF FIDUCIARY DUTY
## (Against Messner as Escrow Holder)

93. Plaintiff incorporates by reference all prior allegations of this Complaint as if fully set out herein.

94. Escrow occurs when any express or implied agreement provides for one or more parties to deliver or entrust any money to another person, to be held, paid, or delivered in accordance with the terms and conditions prescribed in the agreement.

95. An escrow agent assumes the role of the agent to both parties to the transaction, and as such, is a fiduciary held to a high standard of care in dealing with its principals.

96. All assets or property received by an escrow agent in accordance with an escrow agreement shall be maintained in a manner which will reasonably preserve and protect the property from loss, theft, or damage, and which will otherwise comply with all duties and responsibilities of a fiduciary.

97. Exhibit F to the BELOC Agreement directed Konala to deposit its ICA Payment into an escrow account with Messner as the escrow holder with a fiduciary relationship to Konala.

98. As an escrow holder, Messner is held to a high standard of care to Konala and had a duty to exercise reasonable skill and ordinary diligence in disbursing funds which came into its hands by virtue of its status as escrow agent.

99. Pursuant to the Agreement, Messner was required to disburse the funds in a number of specific ways, including returning the funds to Plaintiff should INBE be unable to fund the Advances.

100. Messner had a fiduciary duty to adhere to the instructions of the Agreement to return the funds to Plaintiff should INBE be unable to fund the Advances.

101. Messner also had a fiduciary duty to disclose to Plaintiff if Messner intended to deviate from the instruction to return the funds to Plaintiff should INBE be unable to fund the Advances.

102. On information and belief, Messner had an interest in the transaction, and therefore, Messner was obligated to disclose that interest to Plaintiff before becoming an escrow agent for the parties.

103. Messner violated its fiduciary duty by failing to adhere to the instructions of the BELOC Agreement and abide by its high standard of care to Plaintiff to return the funds to Plaintiff should INBE be unable to fund the Advances.

104. Messner violated its fiduciary duty by failing to disclose to Plaintiff if Messner intended to deviate from the instruction or its high standard of care to return the funds to Plaintiff should INBE be unable to fund the Advances.

105. On information and belief, Messner violated its fiduciary duty by failing to disclose that it had an interest in the transaction.

106. Messner's fiduciary duties arose from its status as an escrow holder, the duties created by the BELOC Agreement, and the duties created by its contractual agreement(s) with INBE and is an independent tort.

107. As a result of Messner's breaches of its fiduciary duties, Plaintiff sustained damages.

108. Plaintiff has sustained damages of $325,000.

109. Plaintiff has also sustained incidental and consequential damages.

110. Plaintiff is entitled to recover costs and prejudgment interest.

111. Plaintiff is entitled to recover attorneys' fees pursuant Utah Code § 78B-5-825.

112. Plaintiff is entitled to recover attorneys' fees because "breach of a fiduciary obligation is a well-established exception to the American rule precluding attorney fees in tort cases generally," including a fiduciary duty tort claim arising from a contractual duty.

**COUNT FIVE – BREACH OF FIDUCIARY DUTY**
**(Against Messner as Trustee)**

113. Plaintiff incorporates by reference all prior allegations of this Complaint as if fully set out herein.

114. Pursuant to one or more agreements with INBE, Messner was the nominated and accepted the role of Trustee with respect to Konala's ICA Payment.

115. As the nominated Trustee, Messner owed fiduciary duties to Konala, who was the intended beneficiary of the BELOC Agreement.

116. Messner had a fiduciary duty to hold Konala's ICA Payment for the purpose of arranging the issuance of the BELOC for the benefit of Konala.

117. Messner had a fiduciary duty to retain Konala's ICA Payment in its "sole possession and control."

118. Messner also had a fiduciary duty to disclose to Konala any intentions to deviate from its obligation to "hold" Konala's ICA Payment in its "sole possession and control" or from its role in arranging the issuance of the BELOC.

119. Pursuant to the BELOC Agreement, Messner was required to hold, manage, disburse, or return Konala's ICA Payment in accordance with specific instructions, including to return Konala's ICA Payment in the event INBE failed to fund the Advances.

120. Messner had a fiduciary duty to comply with the BELOC Agreement and its obligation to return the funds to Plaintiff in the event INBE did not fund the Advances.

121. Messner also had a fiduciary duty to disclose to Plaintiff any intentions to deviate from the obligations to return Plaintiff's ICA Payment under those circumstances.

122. Messner breached its fiduciary duties by:

i. failing to hold Konala's ICA Payment for the purpose of arranging the issuance of the BELOC for the benefit of Konala;
ii. failing to hold Konala's ICA Payment in its "sole possession and control;"
iii. failing to disclose to Konala any intention to deviate from its obligation to hold Konala's ICA Payment for the intended purpose of arranging the issuance of the BELOC for the benefit of Konala;
iv. failing to disclose to Konala any intention to relinquish "sole possession and control" of Konala's ICA Payment;
v. failing to return Konala's ICA Payment to Konala after INBE failed to fund the Advances, in violation of the BELOC Agreement; and,

vi. failing to disclose to Plaintiff any intention to deviate from the obligation to return Konala's ICA Payment to Konala if INBE did not fund the Advances

123. As a direct and proximate result of Messner's breaches of fiduciary duties, Plaintiff sustained damages.

124. Plaintiff has sustained damages in the amount of $325,000.

125. Plaintiff has also incurred incidental and consequential damages as a result of Messner's conduct.

126. Plaintiff is entitled to recover costs and prejudgment interest.

127. Plaintiff is entitled to recover attorneys' fees pursuant Utah Code § 78B-5-825.

128. Plaintiff is entitled to recover attorneys' fees because "breach of a fiduciary obligation is a well-established exception to the American rule precluding attorney fees in tort cases generally," including a fiduciary duty tort claim arising from a contractual duty.

## COUNT SIX – ACTION FOR RESTITUTION BASED ON QUASI-CONTRACT AND UNJUST ENRICHMENT
**(Against both Defendants)**

129. Plaintiff incorporates by reference all prior allegations of this Complaint as if fully set out herein.

130. This claim is pleaded in the alternative to the Breach of Contract claims pleaded against the Defendants.

131. Plaintiff conferred benefits on Defendants INBE and Messner and Defendants had knowledge of those benefits. The benefits included, but were not limited to, the use, arrogation, and usurpation of Plaintiff's ICA Payment.

132. Defendants voluntarily appreciated, accepted, and retained the benefits.

133. The circumstances are such that it would be unjust for Defendants to retain the benefits at the expense of Plaintiff without paying the value thereof to Plaintiff.

134. Plaintiff can recover in quasi-contract for restitution based on Defendants' unjust enrichment.

135. The purpose of a quasi-contract claim is to restore Plaintiff, the aggrieved party, to its former position through the return of the wrongfully obtained property or equivalent in money.

136. The unjust enrichment which Defendants obtained should be returned to Plaintiff.

137. As a result of Defendants' unjust enrichment, Plaintiff sustained damages of $325,000, among other damages as may recoverable.

138. Plaintiff is entitled to recover costs and prejudgment interest.

139. Plaintiff is entitled to recover attorneys' fees under Utah Code § 78B-5-825, which governs fee-shifting in cases where the defense was without merit and not brought or asserted in good faith.

**COUNT SEVEN – RECISSION**
**(Against both Defendants)**

140. Plaintiff incorporates by reference all prior allegations of this Complaint as if fully set out herein.

141. This claim is pleaded in the alternative and is a claim for recission of any and all contractual agreements between Plaintiff and Defendants and a refund of all money, property, and value that Plaintiff conferred to Defendants.

142. Any contractual agreements between Plaintiff and Defendants are subject to recission due to Defendants' failure to fulfill their obligations.

143. Defendant INBE materially breached the contract by failing to fulfill its obligations to timely fund the BELOC and by failing to refund the ICA Payment when proper notice was provided by Plaintiff.

144. Defendant Messner materially breached the contract by failing to discharge its obligations as the nominated Trustee, escrow holder, and/or agent (i) by failing to hold the ICA Payment for the purpose of arranging the issuance of the BELOC for the benefit of Konala; (ii) by failing to return the $325,000 ICA Payment upon INBE's failure to fund the Advances; and (iii) by failing to maintain the funds in its "sole possession and control."

145. Plaintiff therefore seeks to restore the status quo by the return of its $325,000 ICA Payment, plus interest, which is being wrongfully retained by Defendants, and to recover additional damages that would not have been incurred but for Defendants' breaches and failures.

146. Plaintiff is entitled to recover attorneys' fees under Utah Code § 78B-5-825, which governs fee-shifting in cases where the defense was without merit and not brought or asserted in good faith.

147. Plaintiff is entitled to recover attorneys' fees under Utah Code § 78B-5-826, which allows fee and cost-shifting to a prevailing party in an action based upon written contract when the contract allows at least one party to recover attorney fees. Exhibit A of the Agreement includes a provision which allows for the recovery of attorney fees for INBE to enforce the terms of, among other things, the BELOC.

**COUNT EIGHT – CONSUMER PROTECTION**
**Utah Code § 13-11-1 to § 13-11-23**
**(Against both Defendants)**

148. Plaintiff incorporates by reference all prior allegations of this Complaint as if fully set out herein.

149. The Agreement constituted a consumer transaction, as it was an agreement for the transfer of intangible property in the form of money, for a purpose that related to a business opportunity that required an expenditure of money by Konala.

150. Defendants were suppliers, as they are entities who regularly solicit and engage in such consumer transactions.

151. Defendant INBE committed deceptive acts in connection with a consumer transaction by knowingly and/or intentionally mispresenting and warranting its ability to fund the Advances; by, after receipt of the ICA Payment, failing to furnish the service of funding the Advances within the time represented and required by the Agreement; and, by failing to return and instead keeping the ICA Payment after Plaintiff provided proper notice.

152. Defendant Messner committed deceptive acts in connection with a consumer transaction by knowingly and/or intentionally, after receipt of Konala's ICA Payment and after INBE was unable to fund the Advances, failing to fulfill its duties as a nominated Trustee, escrow holder, and/or agent by refunding Konala's ICA Payment within the time represented and required by the Agreement; by failing to hold Konala's ICA Payment for the purpose of arranging the issuance of the BELOC for the benefit of Konala; and by failing to hold the ICA Payment within its "sole possession and control."

153. Defendants knew or had reason to know that the deceptive acts were unconscionable under circumstances which Defendants knew or had reason to know.

154. In particular, Defendant INBE knew or had reason to know that, in reliance upon its representations that INBE was financially able to and would in fact fund the Advances, Konala would pay the ICA Payment to Messner, engage architects, contractors, and other professionals to start the construction phase of its business expansion, and otherwise expended significant sums as it moved forward with its franchise launch.

155. Defendant Messner knew or had reason to know that failing to hold the ICA Payment for the purpose of arranging the issuance of the BELOC for the benefit of Konala, failing to hold the ICA Payment within its sole possession and control, and failing to refund Konala's ICA Payment upon INBE's inability to fund the Advances and notice by Konala to terminate could cause Konala's ICA Payment to be lost and unavailable for return.

156. As a result of these unconscionable and deceptive acts, Plaintiff has suffered actual damages in the amount of the lost $325,000 ICA Payment as well as incidental and consequential damages.

157. These losses were caused by the unconscionable and deceptive acts of Defendants.

158. Plaintiff is entitled to recover attorneys' fees under Utah Code § 78B-5-825, which governs fee-shifting in cases where the defense was without merit and not brought or asserted in good faith.

159. Plaintiff is entitled to recover attorneys' fees under Utah Code § 13-11-19(5).

**ATTORNEYS' FEES**

160. Plaintiff seeks an award of attorney's fees under Utah Code §§ 78B-5-825, 78B-5-826, 13-11-19(5), other applicable law, including as set forth in each specific count, as well as pursuant to Federal Rule of Civil Procedure 54. Moreover, Plaintiffs' counsel affirms that they will not share any legal fee, as to any count, in violation of Utah Rule of Professional Conduct 5.4.

**RESERVATION OF RIGHT TO REQUEST PUNITIVE DAMAGES**

161. Plaintiff reserves the right to develop additional evidence supporting punitive damages, pursuant Utah Code § 78B-8-201, after compensatory or general damages are awarded, by establishing by clear and convincing evidence that the acts or omissions of Messner are the result of willful and malicious or intentionally fraudulent conduct or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others.

**DEMAND FOR JURY TRIAL**

162. Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendants, jointly and severally, as follows:

1. Money damages in an amount in excess of $325,000, and incidental and consequential damages;
2. Costs and prejudgment interest;
3. Attorneys' fees; and,

4. Such other and further relief that the Court finds just and proper.

DATED this 30th day of September, 2025.

**KIRTON MCCONKIE**

*/s/ Julie E. Kenworthy*

Julie E. Kenworthy (9536)
36 South State Street, Suite 1900
Salt Lake City, UT 84111
Telephone: (801) 328-3600
jkenworthy@kmclaw.com

**DEMPSEY FOSTER PLLC**

*/s/ Jennifer Schrack Dempsey*
Jennifer Schrack Dempsey, ISB No. 7603
Admitted pro hac vice
714 W. State Street
Boise, ID 83702
Telephone: (208) 401-9533
jen@dempseyfoster.com

*Attorneys for Plaintiff Konala, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of September 2025, I caused a true and correct copy of the foregoing **SECOND AMENDED COMPLAINT JURY DEMANDED** was filed using the Court's CM/ECF service which sends electronic notice to all counsel of record.

/s/ Sherry Glendening